IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN KIRK SLOAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-2099-M-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Brian Kirk Sloan seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be affirmed.

## Background

Plaintiff alleges that he is disabled due to a variety of ailments, including back and neck pain; fractures in both hands, ankles and feet; liver disease; kidney damage; an ear injury with pain and hearing loss; anemia; and tuberculosis. *See* Dkt. Nos. 13-3 at 48-59, 13-7 at 20. After his applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on January 16, 2014. *See* Dkt. No. 13-3 at 42-65. At the time the hearing, Plaintiff was 48 years old. *See id.* at 37, 45. He is a high school graduate, attended college for one and one-half years, and has past work experience

as a concrete finisher. *See id.* at 37. Plaintiff has not engaged in substantial gainful activity since January 1, 2011. *See id.* at 29.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from alcoholic liver disease, degenerative joint disease of the spine, degenerative joint disease of the cervical spine, hypertension, anemia, and hearing loss in the left ear, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 30, 34. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work, but could not return to his past relevant employment. *See id.* at 35, 37. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a cashier, laundry folder, and bench assembler -- jobs that exist in significant numbers in the national economy. *See id.* at 387-38.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds: (1) the ALJ used the wrong legal standard in evaluating the severity of his impairments; and (2) ) the Appeals Council failed to consider new and material evidence of his disability.

The undersigned concludes that the hearing decision should be affirmed in all respects.

2

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage

3

in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the

4

claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

5

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

6

## Analysis

<u>There is no reversible error under *Stone v. Heckler*.</u>

Plaintiff contends that the ALJ failed to consider all of his vocationally significant impairments, specifically ear pain, left tympanic membrane perforation, tinnitus, and chronic pain. One of Plaintiff's arguments is that the ALJ committed reversible error by failing to apply the appropriate legal standard, set forth by *Stone v. Heckler*, 752 F.2d 1099, 1102 (5th Cir. 1985), and, as a result, failed to consider the effect of vocationally significant impairments on Plaintiff's residual functional capacity ("RFC").

At Step 2, the ALJ found that Plaintiff has the severe impairments of alcoholic liver disease, degenerative joint disease of the spine, degenerative joint disease of the cervical spine, hypertension, anemia, and hearing loss in the left ear. At Step 4, the ALJ found that Plaintiff has the RFC to occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; to stand or walk for a total of four hours and to sit for a total of six hours in an eight-hour workday; and to push and pull, including operation of hand or foot controls, on an unlimited basis with the limitations for lifting and carrying. The ALJ also found that Plaintiff remains capable of climbing, balancing, stooping, kneeling, crouching and crawling on a frequent basis. And the ALJ found that Plaintiff requires the option to alternate sitting and standing. *See* Dkt. No. 13-3 at 35. Based on this RFC, the ALJ found that Plaintiff could perform the jobs of cashier, laundry folder, and bench assembler. *See id.* at 35, 38.

7

Plaintiff argues that the ALJ committed a *Stone* error by citing and apparently applying the statutory definition of "severe" – stating that an impairment is severe "if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Dkt. No. 13-3 at 28 (citing 20 C.F.R. §§ 404.1521 & 416.921; SSR 85-28, 96-3p, & 96-4p).

At Step 2, the primary analysis is whether a claimant's impairment, or combination of impairments, is severe, irrespective of age, education, or work experience. *See Stone*, 752 F.2d at 1100. In *Stone*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express

statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application of the incorrect standard was harmless. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted,* 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (applying harmless error analysis in *Stone* error cases).

In his decision, the ALJ did not refer to *Stone* and instead set forth the severity standard that reflects the regulations set forth by 20 C.F.R. § 416.920(c). *See* Dkt. No. 13-3 at 28. His language is similar or identical to that at issue in *Lacy v. Colvin*, No. 3:13-cv-1312-BN, 2013 WL 6476381, at *8 (N.D. Tex. Dec. 10, 2013), and *Sanders v. Astrue*, No. 3:07-cv-1827-G-BH, 2008 WL 4211146, at *7 (N.D. Tex. Sept. 12, 2008). In *Sanders*, as in the instant case, the ALJ made no reference to *Stone* but stated that an "impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities <u>that would have no more than a minimal effect on an individual's ability to work</u>." *Id.* (emphasis in original). The court in *Sanders* reasoned that this language indicated that the impairment could have, "at most, a minimal effect on a claimant's ability to work."

*Id.* Because the standard set forth in *Stone* "provides no allowance for a minimal interference on a claimant's ability to work," the language in *Sanders* was not a proper recitation of the severity standard. *Id.*

As in *Sanders*, the standard recited by the ALJ here allows for a minimal effect on the claimant's ability to work. The *Stone* severity standard does not allow for <u>any</u> interference with work ability – even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris*, 2012 WL 4468185, at *5. The ALJ therefore erred because he did not actually state the same standard mandated by *Stone*.

In the past, this would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F. Supp. 2d at 806-07; *Sanders*, 2008 WL 4211146, at *8. More recently, however, courts have not automatically remanded such cases. *See, e.g.*, *Lacy*, 2013 WL 6476381, at *8; *Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the correct legal standard was actually applied by the ALJ, *see Morris*, 2012 WL 4468185, at *9, or that the error was harmless, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Many courts have presumed that the *Stone* error is harmless where the analysis continues beyond Step 2. *See, e.g.*, *Lederman v. Astrue*, 829 F. Supp. 2d 531, 539 (N.D. Tex. 2011).

10

Here, Plaintiff suggests that the error cannot be harmless because the ALJ did not properly consider certain alleged impairments – ear pain, left tympanic membrane perforation, tinnitus, and chronic pain – after Step 2 of the Sequential Analysis. That is, according to Plaintiff, the failure to apply the proper *Stone* standard was not harmless because the ALJ did not consider these impairments in Step 4 or Step 5 and possibly found them non-severe based upon the incorrect standard for severity.

But, under either analysis – rebutting the presumption or reviewing for harmless error – substantial evidence supports the ALJ's findings. Even though the ALJ misstated the *Stone* severity standard, Plaintiff has failed to cite objectively reliable evidence in the record to establish that these alleged impairments resulted in functional limitations. The fact that Plaintiff was diagnosed with or suffered from these conditions – or that they are mentioned in his medical records – does not compel the determination that they represent severe and limiting impairments. The records are entirely consistent with a *Stone* finding of nonseverity. Simply put, there is no evidence that Plaintiff's impairments of ear pain, left tympanic membrane perforation, tinnitus, and chronic pain rendered Plaintiff unable to work. Indeed, the ALJ's decision thoroughly reviewed and cited the medical record before him. *See* Dkt. No. 13-3 at 30-37.

Concerning Plaintiff's ear impairments, the ALJ noted that Varsha K. Solanki, M.D. performed an internal medicine consultative examination on October 26, 2011. *See* Dkt. No. 13-3 at 31. Dr. Solanki noted that Plaintiff did not have any hearing problems and his ears were clear. *See id.*; Dkt. No. 14-at 17. Plaintiff was seen at

11

Parkland Hospital on December 6, 2012. He reported hearing loss for two to three years, which had been exacerbated by being hit in the ear five to six months earlier. There was evidence of fluid in the middle left ear and mastoid cells, but no evidence of acute mastoiditis. *See* Dkt. No. 13-3 at 32; Dkt. No. 14-4 at 28-91. An MRI of the brain on December 28, 2012, showed fluid in the middle ear. *See* Dkt. No. 13-3 at 31-32; Dkt. No. 14-4 at 43. On January 22, 2013, a doctor at Parkland Hospital suctioned some white cheesy material and scant purulent material from Plaintiff's left middle ear, which revealed an "intact irritated eardrum with small central inferior posterior perforation." Dkt. No. 14-4 at 35; *see* Dkt. No. 13-3 at 33. Plaintiff was supplied with ear drops for pain. *See* Dkt. No. 13-3 at 33; Dkt No. 14-4 at 40. An audiogram showed Plaintiff to have normal hearing sensitivity in his right ear and moderate sloping to severe mixed hearing loss in his left ear. *See* Dkt. No. 13-3 at 33; Dkt No. 14-4 at 63. Plaintiff was able to hear at conversational levels. *See* Dkt. No. 13-3 at 33; Dkt No. 14-4 at 71. The ALJ also stated that he reviewed additional evidence submitted after the hearing. *See* Dkt. No. 13-3 at 33. Even though not mentioned by the ALJ, that evidence included records from December 4, 2013, stating the plan to perform surgery on Plaintiff's left ear after Plaintiff obtained clearance from his primary care physician. *See* Dkt. No. 14-4 at 73. The ALJ found that Plaintiff's hearing impairment did not meet Listing 2.08, which described hearing loss established by audiometry that is not restorable by a hearing aid, because testing showed that Plaintiff had normal hearing in his right ear, mixed hearing loss in his left ear, and was able to hear speech at normal conversational levels. *See* Dkt. No. 13-3 at 34-35.

12

This is not a situation in which the ALJ cited the incorrect severity standard and then ignored medical records that would support a finding of severity. *See, e.g.*, *Scott v. Comm'r*, No. 3:11-cv-152-BF, 2012 WL 1058120, at \*7-\*8 (N.D. Tex. Mar. 29, 2012); *Scroggins*, 598 F. Supp. 2d at 805-06; *Sanders*, 2008 WL 4211146, at \*7. Rather, the ALJ stated a severity standard that has been held to be incorrect but nonetheless examined the medical records and demonstrated that there was no evidence dictating an impairment that would prevent Plaintiff from engaging in substantial gainful activity. *See* Dkt. No. 13-3 at 28 & 31-37. The ALJ reviewed and considered Plaintiff's testimony and discussed many of his medical records in his RFC determination, detailing hospital and doctor visits related to, among other things, Plaintiff's hearing loss, fluid and infection in the middle left ear, irritation of and a perforation in the eardrum, and left ear pain. *See id.* at 31-35.

Substantial evidence therefore supports the ALJ's finding that the impairments were not severe. As such, even though the ALJ invoked an incorrect recitation of the severity standard, a review of the record as a whole reveals that any error in applying or not applying the *Stone* standard was harmless. *See Taylor*, 706 F.3d at 603.

The Court should not order remand simply because the ALJ did not use the "magic words" in his analysis. The ALJ did consider Plaintiff's alleged deficits, including hearing loss, and incorporated some of the limitations into his RFC determination.

Accordingly, remand is not required on this ground.

13

The Appeals Council properly considered new evidence.

Plaintiff next contends that the severity finding is not supported by substantial evidence because the Appeals Council failed to consider new and material evidence. After the hearing, Plaintiff submitted new evidence to the Appeals Council concerning a surgical procedure (a myringotomy) performed on Plaintiff's left ear on April 1, 2014. *See* Dkt. No. 13-3 at 8-10, 13-23.

The social security regulations provide a claimant an opportunity to submit new and material evidence to the Appeals Council for consideration when deciding whether to grant a request for review of an ALJ's decision. *See* 20 C.F.R. § 404.970(b). Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005); *see also Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 336 (N.D. Tex. 2003). Based on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it. *See Higginbotham*, 405 F.3d at 335 n.1.

A court considering the final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *See Higginbotham v. Barnhart,* 163 F. App'x 279, 281-82 (5th Cir. 2006); *Gonzalez v. Comm'r of Soc. Sec. Admin.,* No. 3:10-cv-2003-O-BF, 2012 WL 1058114, at *10 (N.D. Tex. Jan. 26, 2012), *rec. adopted*, 2012 WL 1065459 (N.D. Tex. Mar. 29, 2012). New

evidence justifies a remand only if it is material. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003); *Moore v. Astrue*, No. 3:07-cv-2017-B, 2009 WL 5386134, at *3 (N.D. Tex. Nov. 13, 2009), *rec. adopted*, 2010 WL 165992 (N.D. Tex. Jan. 13, 2010). Evidence is "material" if: (1) it relates to the time period for which the disability benefits were denied and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *See Moore*, 2009 WL 5386134, at *3.

The undersigned does not find that the new evidence meets this standard. As the Appeals Council explained, the new documents presented are not from the relevant time frame nor do they discuss or relate back to the relevant time frame. *See* Dkt. No. 13-3 at 4 ("The Administrative Law Judge decided your case through February 11, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 11, 2014."). omitted).

Here, Plaintiff offered no explanation as to why this new evidence is material. And, as the Appellate Council pointed out, none of Plaintiff's submissions are from the relevant time frame. *See* Dkt. No. 15-2 at 3. The relevant time frame is from the alleged onset date – January 1, 2011 – through the date of the ALJ's decision – February 11, 2014. Plaintiff's new submissions all appear to contain records from after the relevant time frame. A review of the records does not indicate that they relate to Plaintiff's condition as it existed before the date of the ALJ's decision. The records Plaintiff submitted with his appeal concern surgery on April 1, 2014, for his ear

impairment, a condition that the ALJ considered. As a result, Plaintiff has failed to demonstrate that the new evidence would have changed the ALJ's decision.

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 20, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE